UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN ALVAREZ a/k/a EDUARDO LOPEZ, individually and on behalf of all others similarly situated,

       Plaintiff,

- against -

SCHNIPPER RESTAURANTS LLC, SRG1 LLC d/b/a SCHNIPPER'S QUALITY KITCHEN, SRG2 LLC d/b/a SCHNIPPER'S QUALITY KITCHEN, SRG 570 LEX LLC d/b/a SCHNIPPER'S QUALITY KITCHEN, SRG NYP LLC d/b/a SCHNIPPER'S QUALITY KITCHEN, ANDREW SCHNIPPER, and JONATHAN SCHNIPPER,

       Defendants.

**OPINION AND ORDER**

16 Civ. 5779 (ER)

Ramos, D.J.:

  Named Plaintiff Martin Alvarez ("Alvarez") brings this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Compl., Doc. 1.  Plaintiff alleges that he and all other similarly situated employees are entitled to unpaid minimum wage and costs for tools of the trade from a chain of Manhattan restaurants operating under the name "Schnipper's Quality Kitchen."

  Plaintiff brings this suit against corporate defendants Schnipper Restaurants LLC, SRG1 LLC (d/b/a Schnipper's Quality Kitchen) ("Schnipper's Times Square"), SRG2 LLC (d/b/a Schnipper's Quality Kitchen) ("Schnipper's Flatiron"), SRG 570 LEX LLC (d/b/a Schnipper's Quality Kitchen) ("Schnipper's Midtown East"), and SRG NYP LLC (d/b/a Schnipper's Quality Kitchen) ("Schnipper's Financial District").  Plaintiff also brings this suit against individual defendants Andrew Schnipper and Jonathan Schnipper) (collectively, "Defendants").

Alvarez asserts that he was employed as a delivery person for Schnipper's Times Square from May 2013 until May 2016.  Declaration of Martin Alvarez in Support of Plaintiff's Motion for Conditional Certification, Doc. 39 ("Alvarez Decl."), ¶ 1.  Alvarez claims that during his employment, he also worked at the three other locations of Schnipper's Quality Kitchen. *Id.* ¶ 2.  During Alvarez's employment, he claims he was paid at a rate between $5.00 and $7.50 per hour and did not receive notice that Defendants were taking a tip credit until August 2014.  *Id.* ¶¶ 5, 7.  He was also required to engage in nontipped work for over twenty percent of his work day.  *Id.* ¶ 8.  As a delivery person, Alvarez was required to use a bicycle to make deliveries; however, he used his own bicycle and was not compensated for the costs of purchasing, repairing, or maintaining his bicycle.  *Id.* ¶ 9.  Alvarez also alleges that he never received a proper wage and hour notice from Defendants, and did not receive proper wage statements each month.  *Id.* ¶¶ 13–14.  According to Alvarez, other non-managerial tipped employees were subject to the same policies and practices.  *Id.* ¶¶ 3, 4, 5, 7, 8, 9–12, 13–14.

Presently before the Court is Plaintiff's motion for:  (1) conditional certification of a FLSA Collective Action; (2) approval of Plaintiff's proposed notice and consent forms; (3) production by Defendants of contact information for all potential opt-in plaintiffs; (4) approval of the posting of the proposed notice at Schnipper's Quality Kitchen locations; (5) tolling of the FLSA statute of limitations until Plaintiff is able to send notice to potential opt-in plaintiffs; and (6) tolling of the FLSA statute of limitations from November 10, 2016 to the date of this Order due to the parties' participation in the S.D.N.Y. Mediation Program.  *See* Doc. 37.  As discussed below, Plaintiff's motion is GRANTED in part and DENIED in part.

I. **Conditional Certification of FLSA Collective Action**

   A. **Legal Standard**

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs. 29 U.S.C. § 216(b) (2012). "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage," and again after discovery is largely complete. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a[n] FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted).[1] At stage two, after additional plaintiffs have opted in, "the district court

---

[1] When employees who appear similarly situated are technically employed by separate entities, some courts in this District nevertheless "impose liability . . . not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 557 (S.D.N.Y. 2015) (internal citations omitted). "While the Second Circuit has yet to rule on whether the 'integrated enterprise/single employer doctrine' is applied in FLSA cases, the 'shared policy concerns underlying the . . . doctrine and the FLSA' urge the theory's application to FLSA claims." *Id.* at 558 (quoting *Lopez v. Pio Pio NYC, Inc.*, No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014). To show that a group of employers operate as a "single

3

will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If the court concludes that they are not similarly situated, the action may be "de-certified," and the opt-in plaintiffs' claims "may be dismissed without prejudice." *Id.*

Here, Plaintiff seeks an initial determination of the propriety of notice to putative opt-in plaintiffs. "Because minimal evidence is available" at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiff faces a "'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp.2d 638, 644 (S.D.N.Y. 2010) and *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). He must only make "a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (internal citations omitted). "Accordingly, in deciding whether to grant the [Plaintiff's] motion, the Court must merely find 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261).

---

integrated employer," courts consider: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).

4

In considering Plaintiff's motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F. Supp. 2d at 442 (citations omitted).  If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members.  *Id.*

### B. Discussion

Plaintiff seeks to conditionally certify a collective that spans all non-exempt tipped employees, including bartenders, barbacks, waiters, runners, bussers, and delivery persons, employed at each of the four Schnipper's Quality Kitchen locations spanning a six year time period.  Compl. ¶ 16; Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl.'s Mem.") (Doc. 38) at 11.

Defendants argue that Plaintiff has not met their burden of demonstrating that Plaintiff and potential opt-in plaintiffs were victims of a common policy or plan that violated the law. They claim that Plaintiff has merely proffered "vague, unsupported assertions" and has failed to provide "concrete facts" showing a collective action is warranted.  Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Collective Certification ("Def.'s Mem.") (Doc. 50) at 6.

#### 1. Similarity among Delivery Workers

The Court finds that Alvarez's declaration provides the modest factual showing required to certify a collective action that includes delivery persons.  Alvarez asserts, based on his own experiences and conversations with co-workers, that "all non-managerial tipped employees

5

employed by Defendants were subject to the same wage and hour policies." Alvarez Decl. ¶ 3. Further, in 2013, when Defendants informed Alvarez that he had not been receiving appropriate compensation and offered him back pay, Alvarez recalls that Defendants said that he "and all other delivery persons employed at all Schnippers locations" had been affected in the same way. *Id.* ¶ 6.

With respect to tip notices, Alvarez alleges that based on his observations and conversations, he and other employees at Schnipper's did not receive proper tip notices until August 2014. *Id.* ¶ 7. Alvarez provides specific examples of nontipped tasks he was required to perform, including delivering food ingredients, delivering restaurant supplies, and helping prepare food in the kitchen. *Id.* ¶ 8. Alvarez also mentions five colleagues who he observed engaging in nontipped tasks or discussed nontipped tasks with, and estimates that he and tipped employees spent at least twenty percent of their time devoted to nontipped tasks. *Id.*

Alvarez also asserts that he was required to use his personal bicycle for work and was not reimbursed for the costs of maintaining or repairing the bicycle. *Id.* ¶ 9. Alvarez states that he observed other delivery workers using their own personal bicycles without appropriate compensation. *Id.* He further details a conversation he had with a delivery worker about "the cost of maintaining our bikes" and an incident involving another delivery worker who had to pay out of pocket to replace his bicycle. *Id.* ¶¶ 11–12.

Finally, with respect to Plaintiff's argument that employees at all four Schnipper's restaurants were treated similarly, Alvarez alleges that he has worked at all four locations himself. *Id.* ¶¶ 2, 8. Alvarez also stated that he "regularly observed and spoke with" other employees who were located at each of the four Schnipper's locations. *Id.* ¶ 3. When Defendants informed Alvarez that they owed him some additional compensation in 2013, they

informed Alvarez that he "and *all* other delivery persons employed at *all* Schnipper's locations did not receive compensation to which we were entitled." *Id.* ¶ 6 (emphasis added).

Plaintiff puts forward additional evidence that the Schnipper's restaurants operated as a single integrated enterprise. The four locations are owned by the individual Defendants and share the same logo and trade name. *See* Declaration of C.K. Lee in Support of Plaintiff's Motion for Conditional Class Certification ("Lee Decl.") (Doc. 38) Exs. B–C. The restaurants are all advertised jointly on the same website, www.schnippers.com, and Facebook, Twitter, and Instagram accounts. *Id.* Exs. B, G. Hiring for the four restaurants is centrally managed, and there is a single employee handbook for all of the locations. *Id.* Exs. E–F. The restaurants all offer substantially the same food items, described in the same way. For example, each restaurant offers a veggie burger with "baby arugula, plum tomatoes, red onion, [and] Schnipper sauce on a whole wheat bun" and a green chile cheeseburger with a "special cheese blend, house-roasted poblanos, [and] Schnipper Sauce." *Id.* Ex. D.

These allegations meet the "minimum level of detail" to justify certification. *See Reyes v. Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) (noting the "consensus" in this district that "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations"); *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (noting that a court need not consider more than "pleadings and affidavits" when considering a motion for conditional certification). Alvarez's assertions based on his general conversations with coworkers, supported by specific recollections and observations, provide an "identifiable factual nexus which binds the named plaintiff[] and potential class members together as victims of a particular

7

alleged discrimination," that is in violation of the FLSA and NYLL. *Sbarro*, 982 F. Supp. at 261 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)).

Defendants primarily make two arguments in opposing certification. First, they argue that Plaintiffs must make a more detailed showing. But courts in this district "routinely certif[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices." *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14 Civ. 813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (collecting cases, and certifying collective based on single plaintiff's personal knowledge based on "his observations and his conversations with his coworkers"); *see also Ramos v. Platt*, No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) ("[C]ontrary to Defendants' arguments, conditional certification may be granted on the basis of the complaint and the plaintiff's own affidavits."); *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases to support proposition that "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit"). Furthermore, as noted above, Alvarez's affidavit goes beyond simply stating that he observed other employees being treated similarly with respect to tip credit notice and nontipped activities. Alvarez offers both general assertions that he and other non-exempt tipped employees were treated similarly and details specific interactions and conversations that supported his own observations. *E.g.*, Alvarez Decl. ¶ 12 (alleging that a delivery person who worked at two Schnipper's locations had his personal bicycle stolen from the basement of the Schnipper's Times Square location and had to pay out of pocket for a new bicycle to continue working for Defendants).

Second, Defendants argue that Alvarez is incorrect on a number of factual points: According to Defendants at Schnipper's Financial District, all employees, including delivery workers, are paid full minimum wage. Def.'s Mem. at 12. Defendants also point to their employee handbook, which states that delivery workers are not required to use a bicycle to perform delivery work, and affidavits asserting that tipped delivery persons were not required to perform nontipped activities. *Id.* at 14–15, 16. These issues, however, go to the merits of the underlying FLSA action. "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (internal citations omitted). Therefore, Defendants' arguments "do not present a basis to deny certification." *Santiago v. Tequila Gastropub LLC*, No. 16 Civ. 7499, 2017 WL 1283890, at *1 (S.D.N.Y. Apr. 5, 2017). Of course, if, after discovery, it becomes clear that certain opt-in plaintiffs are not similarly situated, "defendants may move for decertification at that time." *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013).

### 2. Similarity between Delivery Workers and Other Tipped Employees

With respect to Plaintiff's allegations about other nontipped employees, "[i]n the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Guaman v. 5 M Corp.*, No. 13 Civ. 3820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010)). Plaintiff must show some "demonstra[ble] similarity

9

among the individual situations, . . . some identifiable factual nexus which binds the named plaintiffs and potential class members together . . . ." *Colozzi v. St. Joseph's Hospital Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009) (quoting *Heagney*, 122 F.R.D. at 127).

Plaintiff's allegations with respect to non-delivery workers are sparse. Plaintiff affirms that he often had conversations with three co-workers who were servers at various Schnipper's locations and that from those conversations, he "know[s] that all non-managerial tipped employees employed by Defendants were subject to the same wage and hour policies." Alvarez Aff. ¶ 3. These unsupported assertions and conclusory allegations are insufficient to conditionally certify a class. *See, e.g.*, *She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *3–4 (S.D.N.Y. Oct. 16, 2014) (certifying collective of delivery workers only, because plaintiff provided only "vague, conclusory, and unsupported assertions" about other types of employees). Similarly, Plaintiff's allegations with respect to other employees' nontipped work requirements are unavailing. Plaintiff recalls that he heard one server "frequently complain" about nontipped work. Alvarez Aff. ¶ 8. He then states that he observed two servers "engaging in extensive cleaning and prep work that took at least 20% of their workday." *Id.* However, Plaintiff does not allege how he was able to ascertain that all servers regularly spent over twenty percent of their time on nontipped work, especially since he was often away from the restaurant delivering food, ingredients, or supplies. *See id.* ¶ 2.

Therefore, Plaintiffs' motion for conditional certification is granted, but given the information presently before the Court, the class shall only include delivery workers.

### III. Time Period

Plaintiff seeks to conditionally certify a collective action dating back six years, because Plaintiff has brought both FLSA and NYLL claims before the Court. Some courts in this Circuit

10

routinely allow parties to list a six year time period on collective action notices when a plaintiff presents claims under both the FLSA and the NYLL, which has a six-year statute of limitations. *See Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410–11 (S.D.N.Y. 2012). However, three years is the maximum time period to join FLSA collective actions, and no New York state class action has been certified. "It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013).

Plaintiff additionally seeks equitable tolling of the relevant statutes of limitation from the beginning of the time period in which the parties began to negotiate through the S.D.N.Y mediation program through the time Plaintiff is able to send notice to potential opt-in plaintiffs. Pl.'s Mem. at 24–25. Equitable tolling is only appropriate "in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *10 (S.D.N.Y. Nov. 4, 2016) (quoting *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2106 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)). The Court does not find that this case presents any such circumstances. Therefore, the appropriate time period listed on the notice is a period of time dating back three years prior to the filing of the Complaint. *See id.* at *9 (noting that keying notice to a three year period prior to the filing of the complaint is appropriate, as challenges to the timeliness of individual plaintiffs' actions can be entertained at a later date).[2]

---

[2] It is for this reason that Defendants' arguments about the release signed by Plaintiff in December 2013 do not defeat conditional certification of a collective action dating back three years prior to the filing of the Complaint. Plaintiff is not prohibited from bringing an FLSA action for violations after the date he signed the settlement in December 2013. *See Escamilla v. Uncle Paul's Pizza & Cafe*, 16 Civ. 6305 (ALC) (KHP), Doc. 58 at *11 (S.D.N.Y. May 18, 2017) (citing *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 50 (E.D.N.Y. 2010)). Assuming *arguendo* that the release prohibits Plaintiff from recovering for wage and hour violations prior to December 2013, this does not create a dissimilarity that would defeat conditional certification, because FLSA collective actions generally involve employees who have claims that are valid for varying periods of time. *Id.* at *11–12.

### IV. Form and Content of Proposed Notice

The next issue involves the form and method of distribution of the court-authorized notice to be sent to the potential opt-in class of similarly-situated Schnipper's employees. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). "[T]he district court has discretion regarding the form and content of the notice." *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (citation omitted).

Plaintiff has submitted a proposed notice to potential opt-in plaintiffs. Defendant has raised several objections to the notice. The parties are instructed to meet and confer and submit a joint proposed notice within two weeks of the entry of this Order. The parties are also instructed to discuss the best methods to be used to provide current employees of Defendants notice of the lawsuit, including by posting a notice at the four Schnipper's locations or by enclosing notice within a pay envelope. If the parties fail to agree, they are instructed to submit a joint letter explaining the remaining differences. *See, e.g.*, *id*. (instructing the parties to meet and confer regarding the proposed notice).

### V. Contact Information

Plaintiff additionally seeks an order directing Defendants to produce the "names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers" of potential opt-in plaintiffs. Pl.'s Mem. at 23. Defendants argue that this request is overbroad, and that Defendants should only be required to provide names and addresses of potential opt-in plaintiffs. "Courts in this District commonly

12

grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a[n] FLSA collective action." *Benavides v. Serenity Spa NY Inc,*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) (citing *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19–20 (S.D.N.Y. Jan. 4, 2016)).  The Court will therefore grant Plaintiff's motion with respect to names, titles, compensation rates, dates of employment, mailing addresses, email addresses, and telephone numbers.  However, Plaintiff has not yet demonstrated the need for the productive of "such sensitive information" as employees' social security numbers.  *Id.* at 489; *Garcia*, 2016 WL 6561302, at *9.  Plaintiff may renew this request if Plaintiff is unable to effectuate notice on potential opt-in plaintiffs with the information that is produced by Defendants.

## VI. Conclusion

For the reasons stated above, it is hereby ORDERED that:

(1) The Court grants conditional certification of the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b) on behalf of all delivery persons employed by Defendants at each of their four restaurants located in New York City for the three-year period prior to the filing of the Complaint (collectively, the "Covered Employees");

(2) The Court grants approval of the distribution of the notice of this FLSA Action to Covered Employees, including a consent form (or opt-in form) as authorized by the FLSA;

(3) Within two weeks of the filing of this Order, the parties are to submit a joint proposed FLSA notice;

(4) Within ten days of the filing of this Order, Defendants are to produce in Excel format the names, titles, compensation rates, dates of employment, last known mailing addresses, known email addresses, and all known telephone numbers of the Covered Employees;

(5) The Court denies Plaintiff's motion for equitable tolling of the FLSA statute of limitations until such time that Plaintiff is able to send notice to potential opt-in plaintiffs; and

(6) The Court denies Plaintiff's motion for equitable tolling of the FLSA statute of limitations for the period during which the parties were engaged in the S.D.N.Y. Mediation Program.

The Clerk of the Court is respectfully directed to terminate the instant motion, Doc. 37.

It is SO ORDERED.

Dated:   December 11, 2017
         New York, New York

                                                          Edgardo Ramos, U.S.D.J.