**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARTIN ALVAREZ a/k/a EDUARDO
LOPEZ, on behalf of himself, FLSA Collective
Plaintiffs and the Class,

         Plaintiff,

– against –

SHNIPPER RESTAURANTS LLC, et al.,

         Defendants.

**OPINION AND ORDER**

16 Civ. 5779 (ER)

Ramos, D.J.:

  Plaintiff, Martin Alvarez, a/k/a Eduardo Lopez, brought the above-captioned action on behalf of himself and those similarly situated against Defendants Schnipper Restaurants LLC, SRG1 LLC d/b/a Schnipper's Quality Kitchen, SRG2 LLC d/b/a Schnipper's Quality Kitchen, SRG 570 Lex LLC d/b/a Schnipper's Quality Kitchen, SRG NYP LLC d/b/a Schnipper's Quality Kitchen, Andrew Schnipper, and Jonathan Schnipper (collectively, "Defendants") claiming violations of the Fair Labor Standards Act ("FLSA") and of New York Labor Law.

  Before the Court is Plaintiff's unopposed motion for an order: (1) granting preliminary approval of the Settlement Agreement; (2) conditionally certifying the settlement class under Federal Rule of Civil Procedure 23(b)(3) and 29 U.S.C. § 216(b); (3) approving the proposed notice; (4) approving the proposed schedule for final settlement approval and setting a date for the Fairness Hearing and related dates; and (5) appointing class counsel. For the reasons stated below, Plaintiff's motion is DENIED without prejudice.

## I. Background and Procedural History

Schnipper's Quality Kitchen, owned by Andrew and Jonathan Schnipper, has four locations throughout New York. Alvarez asserts that he was employed as a delivery person for Schnipper's Times Square from May 2013 until May 2016. Declaration of Martin Alvarez in Support of Plaintiff's Motion for Conditional Certification, Doc. 39 ("Alvarez Decl.") ¶ 1. Alvarez claims that during his employment, he also worked at the three other locations of Schnipper's Quality Kitchen. *Id.* ¶ 2. During Alvarez's employment, he claims he was paid at a rate between $5.00 and $7.50 per hour and did not receive notice that Defendants were taking a tip credit until August 2014. *Id.* ¶¶ 5, 7. He was also required to engage in nontipped work for over twenty percent of his work day. *Id.* ¶ 8. As a delivery person, Alvarez was required to use a bicycle to make deliveries; however, he used his own bicycle and was not compensated for the costs of purchasing, repairing, or maintaining his bicycle. *Id.* ¶ 9. Alvarez also alleges that he never received a proper wage and hour notice from Defendants and did not receive proper wage statements each month. *Id.* ¶¶ 13–14. According to Alvarez, other non-managerial tipped employees were subject to the same policies and practices. *Id.* ¶¶ 3–14.

Alvarez retained Lee Litigation Group, PLLC to represent himself and FLSA Collective Plaintiffs and Class members and filed this action on July 20, 2016. Doc. 1. Defendants filed an answer on November 9, 2016. Doc. 27. On December 12, 2017, the Court granted conditional certification of the FLSA class. Doc. 61. Fifteen individuals opted-in to become party plaintiffs. Docs. 75–89. Following private mediation on September 7, 2018, the parties reached a class settlement. Doc. 100. On December 17, 2018, Plaintiffs filed the instant unopposed motion for preliminary approval of the class settlement and related relief. Doc. 105.

## II. Proposed Settlement Agreement

The Settlement Agreement reached by the parties provides that Defendants will pay up to $330,000.00 (the "Maximum Settlement Amount") "to settle fully and finally all Released Claims . . . in the Litigation." Doc. 106, Ex. A ("Settlement Agreement") at 1. At minimum, Defendants will pay an amount "sufficient to satisfy the Claimed Net Settlement Fund, payment of Service Award, payment of the Settlement Administrator's fees and Payment of Class Counsel's Legal Fees and Costs," (the "Minimum Settlement Amount"). *Id.* ¶ 1.20. Defendants will deposit this sum in installments into a qualified settlement fund, to be established and controlled by a settlement claims administrator, in this case Rust Consulting. *Id.* ¶¶ 1.29, 1.31, 2.2, 3.1. Class Members will be mailed notice of the settlement agreement with information about how they can either participate in the settlement or exclude themselves from or object to the settlement. *Id.* ¶¶ 2.4–2.6. Those who file a valid claim form will receive a settlement check based on weeks worked within the class period. *Id.* ¶ 3.4. Additionally, Alvarez can petition the Court for $7,500 as a service award from the fund. *Id.* ¶ 3.3. The settlement claims administrator will receive $15,000. *Id.* Class Counsel may also apply for reimbursement from the fund. *Id.* ¶ 3.2. The Court will have the opportunity to approve the amount of fees and costs paid to class counsel, who will file a motion for approval of attorneys' fees and costs prior to the final settlement approval hearing. *Id.* Class counsel will seek fees totaling one-third of the settlement fund.[1] Doc. 107 at 4–5.

---

[1] The Court notes that when such application is made, counsel must provide documentation to support the reasonableness of the proposed attorneys' fees. "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

In exchange, settlement class members will release Defendants "from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Litigation as of the date the Court issues an Order preliminarily approving the Parties' settlement." Settlement Agreement ¶ 4.1. Alvarez has agreed to a broader release and will release Defendants from any "actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which [he] may have against[Defendants] . . . whether known or unknown, asserted or unasserted," etc. *Id.*

The Settlement Agreement provides that within fifteen days of the Court's preliminary approval, Defendants will provide the settlement administrator with the name, telephone number, social security number, and last known address of all class members in electronic form. Fifteen days after that, the settlement claims administrator will mail all class members the Court-approved settlement notice and claim form. *Id.* ¶ 2.4. From that point, settlement class members will have sixty days to either submit a claim form, opt out of the settlement agreement, or mail written objections to the settlement administrator. *Id.* ¶¶ 2.4–2.6. Anyone who does not opt-out will be deemed to have accepted the settlement and will release all relevant claims. *Id.* ¶ 2.5. The Settlement Agreement also provides for a fairness hearing before the Court before final approval of the settlement. *Id.* ¶ 2.7.

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "In exercising this discretion, courts should give 'proper deference to the private consensual decision of the parties.'" *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ.

5672 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988)). "In evaluating the settlement, the Court 'should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . .'" *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., *Manual for Complex Litig.* § 30.42 at 240 (3d. ed. 1997)).

Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Settlement Class Members' input. Therefore, preliminary approval of a settlement agreement "requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (LDW) (GRB), 2015 WL 574280, at *1 (E.D.N.Y. Feb. 9, 2015) (internal citations omitted). The fairness of a settlement turns on its terms as well as the negotiating process from which it emerged. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement proposal] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-Eastern R.R.*, 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the Court finds that it "appears to fall within the range of possible approval," the Court should order that the class members receive notice of the settlement. *In re Vitamins Antitrust Litig.*, Nos. Misc. 99–197 (TFH), 1285 (MDL), 2001 WL 856292, at *4 (D.D.C. 2001).

5

Here, the Court finds that probable cause does not exist to hold a full-scale hearing as to the fairness of the Settlement Agreement for four reasons. First, Alvarez's release is far too broad and goes well beyond the claims at issue in this litigation. This Court may not approve FLSA settlements containing an "overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks and citations omitted). "Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). This is especially true where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Even where releases affect only named plaintiffs, courts in this district have rejected overly broad releases as part of their duty to "police unequal bargaining power between employees and employers." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (quoting *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2730 (ANT), 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015)); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (denying preliminary approval of a settlement containing a nonmutual general release); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15 Civ. 1321 (WHP), 2015 WL 5148867, at *1 (same). Here, because the Named Plaintiff's release far exceeds the scope of the FLSA, this Court finds that it cannot preliminarily approve the Settlement Agreement.

Second, the Settlement Agreement has a confidentiality clause that contains both non-disclosure and non-disparagement provisions. These provisions "contravene[] the remedial purposes of the [FLSA] and . . . [are] not fair and reasonable." *Martinez*, 2016 WL 206474, at *1 (internal quotation marks omitted) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015)). The non-disclosure provision prevents Alvarez from publicizing the terms of the agreement and release to the media or from discussing them on social media. Settlement Agreement ¶ 4.2. Even though the confidentiality provision does not purport to seal the case, it "imposes an obligation on the plaintiff—a gag order, really—to refrain from discussing any aspect of the case or the settlement" on certain platforms. *Camacho*, 2015 WL 129723, at *2. Courts in this District have found that,

> Practically speaking . . . the public filing of the settlement in this case, standing alone, is unlikely to benefit low-wage workers. Documents available via ECF are almost as obscure for some people, including many whom the FLSA aims to protect, as paper courthouse filings were in the pre-digital age. Pragmatically, the best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization. Yet non-disclosure provisions prevent workers from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally. For these reasons, a non-disclosure agreement in an FLSA settlement, even when the settlement papers are publically available on the Court's docket, is contrary to well-established public policy because it inhibits one of the FLSA's primary goals—to ensure that all workers are aware of their rights.

*Nights of Cabiria,* 96 F. Supp. 3d at 179–80 (internal quotation marks and citations omitted). Such a provision "runs afoul of the purposes of the FLSA and the 'public's independent interest in assuring that employees' wages are fair.'" *Camacho*, 2015 WL 129723, at *2 (quoting *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003)).

The confidentiality clause also provides that "[Alvarez] further agrees not to make disparaging comments related to Defendants except as may be required by law or protected by

7

law." Settlement Agreement ¶ 4.2. "Courts in this District have held that while not all non-disparagement clauses are *per se* objectionable, if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." *Martinez*, 2016 WL 206474, at *1 (internal quotation marks omitted) (quoting *Lazaro-Garcia*, 2015 WL 9162701, at *3). If it does not, "such a provision contravenes the remedial purposes of the [FLSA] and . . . is not fair and reasonable." *Id.* (quoting *Lazaro-Garcia*, 2015 WL 9162701, at *3). Because the Settlement Agreement contains a non-disclosure provision and because the non-disparagement clause at issue here does not include a carve-out for truthful statements, the Court will not approve the Agreement with the confidentiality clause as currently written.

Third, Plaintiffs argue that the settlement amount is fair because it "represents a good value given the attendant risks of litigation." Doc. 107 at 13–14. But the parties do not explain what the range of possible recovery for *any* Plaintiff is. Other courts in this District have rejected settlements when the parties do not present sufficient information regarding the range of recovery, as "[i]n the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable." *See Nights of Cabiria*, 96 F. Supp. 3d at 177. Although the settlement amount may be imminently reasonable, the Court cannot judge its fairness without more information on the Plaintiffs' possible recovery.

Finally, the Settlement Agreement provides that the settlement checks "will be allocated 25% to W-2 wage payments and 75% to 1099 non-wage payments for interest, liquidated damages and statutory penalties." Settlement Agreement ¶ 3.5. However, "FLSA settlement represents an award of back pay and not also liquidated damages until the plaintiff is compensated for the wages allegedly owed." *Guzman v. Prodelca Corp.*, No. 16 Civ. 2637

8

(AJP), 2016 WL 4371631, at *1 (S.D.N.Y. Aug. 16, 2016). Therefore, to the extent the settlement amount for each claimant is "less than the full amount of alleged unpaid wages, all of the settlement payments to the plaintiff (after deduction of attorneys' fees and costs) must be on a taxable W-2 basis." *Id.* at *2.

For the foregoing reasons, the Court must therefore deny Plaintiff's motion for preliminary approval. Because the proposed notice and schedule for final settlement approval are dependent on preliminary approval of the Settlement Agreement, the Court declines to consider these at this juncture.

### III. Conditional Certification of the Settlement Class

Plaintiff also seeks conditional certification of a Rule 23 Class for the purposes of facilitating a settlement. Should the parties decide to amend the Settlement Agreement in light of the Court's discussion in Part II *supra*, class and collective action certification will likely be granted based on the information provided.

> Under Rule 23 of the Federal Rules of Civil Procedure, a class action may proceed when:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Provisional class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating settlement, ensuring notification to class members of the proposed settlement agreement, and setting the date and time of the final approval hearing. *See, e.g.*, *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817 (CBA) (JMA), 08 Civ. 00287 (CBA) (JMA), 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (conditionally certifying a multi-state wage and hour settlement class and granting preliminary approval to nationwide wage and hour settlement).

9

Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23, for settlement purposes: "Named Plaintiff, Opt-in Plaintiffs and all individuals who worked as delivery employees for any of the Corporate Defendants . . . from July 20, 2010 through the date of preliminary approval." Doc. 107 at 14. Defendants do not oppose class certification for the purposes of achieving settlement and therefore do not contest that the requirements for class certification under Federal Rule of Civil Procedure 23 have been met. The Court finds that, based on the information presently before it, Plaintiffs meet the requirements for class certification.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 225 class members, rendering joinder impracticable. Doc. 107 at 15; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members"). Rules 23(a)(2) and (3) are also satisfied. Alvarez contends that he and the other class members "were all non-exempt, tipped, delivery persons employed by Defendants, and that they were subject to the same policies." Doc. 107 at 16. The Court finds that there are common issues of law or fact among the class members and that Alvarez's claims are typical of the class members' claims. *See Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 258–59 (S.D.N.Y. 1998) (observing that commonality and typicality "tend to merge into one another, so that similar considerations animate analysis") (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (conditionally certifying a class alleging the same state wage and hour violations for settlement purposes); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494 (DCF), 2009

WL 5841177, at *2–3 (S.D.N.Y. May 28, 2009) (granting final approval of a class alleging state wage and hour violations for settlement purposes).

Finally, Plaintiffs satisfy Rule 23(a)(4)'s "adequacy of representation" inquiry, which "looks both to the ability of class counsel and to the potential for conflict of interest between the representative plaintiffs and the rest of the class." *Martens*, 181 F.R.D. at 259. Alvarez's interests are not antagonistic to or at odds with those of the settlement class members. *See id.* ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (quoting *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995)).

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3), as "[c]ommon factual allegations and a common legal theory predominate over any factual or legal variations among the Class Members." *Reyes*, 2009 WL 5841177, at *3. "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient." *Id.*; *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) (finding class adjudication of state wage and hour claims appropriate even where a FLSA collective action was simultaneously available). Thus, the Court finds that conditional certification of a settlement class would be appropriate.

Plaintiffs also seek conditional certification of a FLSA collective action. The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage," and again after discovery is largely complete. *McGlone*

*v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a[n] FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted). The standard for certification of a collective action is less stringent than certification of a class. *See Hadel v. Gaucho, LLC*, 15 Civ. 3706 (RLE), 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016). Plaintiffs argue that they are similarly situated because "they were not paid proper minimum wages due to invalid tip credit." Doc. 107 at 19. The Court finds that Plaintiffs are likely entitled to conditional certification as an FLSA collective action.

### IV. Appointing Class Counsel

The adequacy of class counsel is also not contested at this stage. The Court finds that appointment of C.K. Lee of Lee Litigation Group PLLC as class counsel is likely warranted because counsel has performed substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims. Doc. 106 ¶¶ 9–17. Counsel is also skilled and experienced in employment class action with extensive experience prosecuting and settling wage and hour class and collective actions. *Id.* ¶¶ 4–7. Courts have also found counsel to be adequate class counsel in similar class actions. *Id.* ¶ 7.

## V. Conclusion

Accordingly, Plaintiffs' request for approval of the proposed settlement is DENIED without prejudice. The parties may proceed in one of the following ways:

1. File a revised settlement agreement on or before **November 21, 2019**; or

2. File a joint letter on or before **November 21, 2019** that indicates the parties' intention to abandon settlement and continue to trial.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 105.

SO ORDERED.

Dated: November 1, 2019
       New York, New York

_____
Edgardo Ramos, U.S.D.J.